**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RHONDA MOORE, Administratrix of the Estate of MJP,[1] Deceased, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 10-768 Judge Nora Barry Fischer |
| ESTELLE B. RICHMAN, et al., | ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

### I. INTRODUCTION

This civil rights action arises from the tragic death of minor MJP on June 6, 2008 at a privately owned day care facility. (Docket No. 20). Her mother and the executrix of her estate, Rhonda Moore, initiated the present action against state officials Estelle Richman, Harriet Dichter, Todd Klunk, Jennifer Lau, Michael Rodden, and Joni Ricketts (collectively, the "Named Defendants") seeking to recover for MJP's untimely death. (*Id.*). She invokes 42 U.S.C. § 1983 and claims that said state officials violated MJP's due process rights. (*Id.*). Plaintiff seeks damages against said state officials in their individual capacities under a "state-created danger" theory. (*Id.*). The Named Defendants have moved to dismiss Plaintiff's Amended Complaint, arguing that Plaintiff's claims fail as a matter of law and must be dismissed. (Docket Nos. 21, 22). The motion has been fully briefed and the Court heard oral argument from counsel on February 16, 2011. (Docket Nos. 21, 22, 23, 24). Upon consideration of the parties' positions,

---

[1] The Court notes that pursuant to Local Rule 5.D.2, the names of all minor children are redacted, to include only the children's initials. *See* W.D.Pa.L.R. 5.D.2. Accordingly, the Court amends the caption to comply with Local Rule 5.D.2.

and for the following reasons, the Named Defendants' Motion [21] is granted and Plaintiff's Amended Complaint is dismissed, with prejudice.

II. BACKGROUND

*A. Allegations in Plaintiff's Complaint*

Bray's Family Day Care Center was a privately owned family day care center operated by proprietor Loretta C. Bray in her home at 5113 Dearborn Street, Pittsburgh, PA 15224. (Docket No. 20 at ¶ 17). Bray's daughter, Ashley Swann, also worked at the day care center and lived in her mother's home. (*Id*.). Day care services were provided in the family room basement of the home and the children were all housed together in that room during the day. (*Id*. at ¶ 30). Thus, the children were not grouped together and/or separated based upon their ages. (*Id*.).

Plaintiff Rhonda Moore took her 10-month old daughter, decedent MJP, to the day care center on occasion. On, June 6, 2008, Moore dropped off MJP at the day care center. (*Id*. at ¶ 27). Ms. Bray and Ms. Swann were both working at the day care center and six children were present on that day. (*Id*. at ¶¶ 28, 29). The ages of these children varied; MJP was the youngest child at 10 months and the oldest child was Bray's granddaughter KBT,[2] who was 7 years old. (*Id*. at ¶ 29). Swann's son was one of the children who were present. (*Id*. at ¶ 32). Both Bray and Swann had concerns regarding anger management issues of KBT and her prior conduct toward MJP. (*Id*. at ¶ 36).

At around 10:00 a.m. on June 6, 2008, Bray left the facility, leaving Swann as the sole provider of care for the six (6) children. (*Id*. at ¶ 31). Shortly thereafter, Swann left the basement family room with her son and proceeded to the third floor of the home, leaving the remaining five (5) children unsupervised in the basement. (*Id*. at ¶ 32). Swann was unable to

_____

[2]      *See* n. 1, *supra*.

see or hear the children from the third floor because the day care center did not have sound and/or camera observation capabilities.  (*Id*. at ¶ 33, 34).

Swann returned to the basement around 12:00 p.m. and found MJP unresponsive and bleeding and she observed evidence of bruising.  (*Id*. at ¶ 34).  Swann immediately contacted Pittsburgh's 911 Call Center and emergency responders appeared and transported MJP to UPMC Children's Hospital.  (*Id*. at ¶ 35).  Medical professionals were unable to revive MJP and she was pronounced dead at UPMC Children's.  (*Id*. at ¶ 36).  "Examination of the Decedent by the staff of Children's Hospital and subsequently by the Medical Examiner of Allegheny County established that the Decedent sustained blunt force trauma to her head and abdomen; that she had suffered a fracture of the distal right radius; a skull fracture; and, had suffered multiple bruises and abrasions, all of which were said to have been caused by the actions of [KBT], who was seven (7) years of age."  (*Id*.).

In order to operate, the day care center acquired a certificate of registration from the Commonwealth of Pennsylvania.  The Pennsylvania Department of Public Welfare is tasked with the certification and/or licensing of child day care centers and family child day care homes throughout the Commonwealth.  *See* 55 Pa.Code § 3270.1 et seq.  Within the Department of Public Welfare, the Office of Child Development and Early Learning oversees the licensing, certifications and inspections of child day care centers and family child day care homes.  (Docket No. 20 at ¶ 8).  The actual inspections and certifications/licenses are issued by the Bureau of Certification Services of the Office of Child Development and Early Learning from one of its four regional offices.  (*Id*. at ¶ 10).  The regional office in the Pittsburgh area is the Southwest Regional Office.  (*Id*.).

The Named Defendants are currently or were employed by the Commonwealth at one of these state entities. (*Id*. at ¶¶ 3-12). Estelle Richman was the Secretary of the Pennsylvania Department of Public Welfare from 2003 through December 31, 2009. (*Id*. at ¶ 4). Harriet Dichter was named acting Secretary of the Pennsylvania Department of Public Welfare on December 31, 2009 and was named Secretary in April of 2010. (*Id*. at ¶ 5). Ms. Dichter is also named as a defendant based on her role as former Deputy Secretary of the Pennsylvania Department of Public Welfare, Office of Child Development and Early Learning, a position which she held from 2004 through December 31, 2009. (*Id*. at ¶ 6). Todd Klunk is named as a defendant as the acting Deputy Secretary of the Office of Child Development and Learning. (*Id*. at ¶ 7). Jennifer Lau is the Director of the Bureau of Certification Services of the Office of Child Development and Early Learning. (*Id*. at ¶ 9). Michael Rodden was an inspector with the Southwest Regional Office from around 2008 through 2010. (*Id*. at ¶ 11). Joni Ricketts is also an inspector with that office. (*Id*. at ¶ 12).

Plaintiff avers that Rodden and Ricketts "inspected Bray's Family Day Care in connection with the initial granting of a certificate of registration for the operation of such entity and/or thereafter in connection with periodic inspections or another renewal of the certificate of registration." (*Id*. at ¶¶ 11, 12).

As noted, the Commonwealth has codified regulations governing the operation and licensing requirements for family child day care homes at 55 Pa.Code. § 3290, *et seq*. The stated purpose of the regulations "is to provide standards to aid in protecting the health, safety and rights of children and to reduce the risks to children in family day care homes" and the regulations identify the "minimum level of compliance necessary to obtain the Department's certificate of registration." 55 Pa.Code § 3290.2. A "family child day care home" is a "[a] home

other than the child's own home, operated for profit or not-for-profit, in which child day care is provided at any one time to four, five or six children unrelated to the operator." 55 Pa.Code. § 3290.4. The Department of Public Welfare has the authority to deny the issuance of a certificate of registration or to revoke a previously issued certificate due to an individual's or facility's failure to comply with the requirements of section 3290. *See* 55 Pa.Code § 3920.12.

Plaintiff claims that a number of these requirements were violated by Bray's Family Day Care, including the following. All staff personnel must meet certain age requirements and must complete a minimum number of hours of approved training. 55 Pa.Code § 3290.31. The maximum number of children in care at a family child day care center cannot exceed six (6) children at any one time who are unrelated to the operator. 55 Pa.Code § 3290.51. In addition,

> The operator may provide care to no more than five related and unrelated infants and toddlers at any one time. No more than two related and unrelated infants may receive care at any one time. The following numbers of infants and toddlers are permitted in a family day care home:
>
> > (1) If no infants are in care, five toddlers are permitted.
> > (2) If one infant is in care, four toddlers are permitted.
> > (3) If two infants are in care, three toddlers are permitted.

55 Pa.Code. § 3290.52. An "infant" is defined as "a child from birth to 1 year of age." 55 Pa.Code § 3290.4. A "young toddler" is "a child from 1 to 2 years of age." 55 Pa.Code § 3290.4. An "older toddler" is defined as "a child from 2 to 3 years of age." 55 Pa.Code § 3290.4.

The regulations further provide that "children on the facility premises … shall be supervised by a staff person at all times." 55 Pa.Code § 3290.113. To supervise is "to be present in the child care facility with the children or with the facility person under supervision. Supervision is critical oversight in which the supervisor can see, hear, direct and assess the

activity of the supervisee."  55 Pa.Code § 3290.4.  Operators are also required to maintain comprehensive general liability insurance to cover the individuals on the premises, but the registration does not specify minimum coverage requirements.  55 Pa.Code § 3270.18.

Plaintiff has not sued Bray, Swann or Bray's Family Day Care in this action.[3]  (*See* Docket No. 20).  Instead, she claims that the injuries to her daughter, MJP, and damages sustained were proximately caused by the negligence, gross negligence, or willful misconduct of the Named Defendants in violation of MJP's constitutional rights.  (*Id*. at ¶¶ 70-75).  Specifically, Plaintiff alleges that the Named Defendants failed to promulgate effective regulations to insure that: children were protected from harm; the day care center was timely inspected; regulations concerning staff ratios, training and grouping of children were enforced; and children were properly supervised. (*Id*.). Plaintiffs also complain that the Named Defendants failed to discover the alleged deficiencies at Bray's Family Day Care prior to MJP's death. (*Id*.).

### B.  Procedural History

Plaintiff filed her initial complaint in this action on June 6, 2010.  (Docket No. 1). Plaintiff sued not only the Named Defendants but also the Commonwealth of Pennsylvania, the Department of Public Welfare and each of the other state entities referenced in her Amended Complaint.  (*Id*.).  She advanced claims under §1983 asserting violations of MJP's constitutional rights seeking damages and injunctive relief as well as claims of wrongful death and survival under Pennsylvania law against these defendants.  (*Id*.).  Defendants filed a motion to dismiss Plaintiff's Complaint on November 10, 2010.  (Docket Nos. 10, 11).  In response, Plaintiff conceded that many of the Defendants' arguments were meritorious and agreed to dismiss certain claims, but also sought leave to amend her complaint.  (Docket Nos. 14, 16).

---

[3]        *See* n. 9, *infra*.

Upon consideration of these arguments, the Court granted, in part and denied, in part, Defendants' motion to dismiss. (Docket No. 17). The Court further ordered the following: (1) Plaintiff's claims against Defendants, the Commonwealth of Pennsylvania; the Pennsylvania Department of Public Welfare; Office of Child Development and Early Learning; Bureau of Certification Services, Office of Child Development and Early Learning; Southwest Regional Office, Bureau of Certification Services, Office of Child Development and Early Learning were dismissed, with prejudice given that these entities were entitled to immunity under the Eleventh Amendment and were not "persons" subject to suit under 42 U.S.C. § 1983; (2) Plaintiff's claims against the Named Defendants, sued in their official capacities and requesting any form of monetary relief, were dismissed, with prejudice; (3) Plaintiff's claims asserted under Pennsylvania's Wrongful Death and Survival statutes were dismissed, with prejudice; and (4) that Plaintiff was granted leave to amend her § 1983 claim against the Named Defendants in their individual capacities for monetary relief and against them for injunctive relief under the doctrine of *Ex Parte Young*, 209 U.S. 123 (1908). (*Id.*).

Pursuant to this Order, and after receiving an extension of time to do so, Plaintiff filed her Amended Complaint on December 17, 2010. (Docket No. 20). The pending motion to dismiss then followed from the Named Defendants on January 7, 2011. (Docket Nos. 21, 22). Plaintiff filed her response to the present motion to dismiss on January 28, 2011 and requested that the Court hold oral argument. (Docket Nos. 23, 24). The Court then held oral argument on February 16, 2011. (Docket No. 30). At the hearing, Plaintiff's counsel conceded that Plaintiff had not stated a viable claim for injunctive relief under the doctrine of *Ex Parte Young*. (Docket No. 30 at 55-56)[4]. Thereafter, Plaintiff submitted a supplemental brief offering further argument in support of her claim under the state-created danger theory. (Docket No. 29). The transcript of

---

[4]        *See* n. 5, *infra*.

the proceeding was ordered at the hearing and filed of record on March 16, 2011. (Docket No. 30). Defendant did not file a supplemental brief despite being afforded the opportunity to do so. Accordingly, the present motion is ripe for disposition.

III. LEGAL STANDARD

On a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, the Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to Plaintiff, and determine whether, under any reasonable reading of the complaint, Plaintiff may be entitled to relief.'" *Phillips v. County of Allegheny,* 515 F.3d 224, 231 (3d Cir.2008) (quoting *Pinker v. Roche Holdings Ltd.,* 292 F.3d 361, 374 n. 7 (3d Cir.2002)).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 544); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009); and FED. R. CIV. P. 8(a)(2) (providing that a valid complaint requires only "a short and plain statement of the claim" showing entitlement to relief). The Supreme Court in *Iqbal* clarified that the decision in *Twombly* "expounded the pleading standard for 'all civil actions.'" *Iqbal*, 129 S.Ct. at 1953; *Fowler*, 578 F.3d at 210-11. The Court further explained that although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, the pleadings must include factual allegations to support the legal claims asserted. *Iqbal*, 129 S.Ct. at 1949, 1953; *Santiago v. Warminster Tp.*, 629 F.3d 121, 128 (3d Cir. 2010). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct at

1949 (citing *Twombly*, 550 U.S. at 555); *see also Fowler*, 578 F.3d at 210; and *Phillips*, 515 F.3d at 232.

The determination of whether a complainant has sufficiently pled a claim "is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950 (citing *Twombly*, 550 U.S. at 556); *see also Fowler*, 578 F.3d at 210-11 (holding that in light of *Iqbal*, a district court should first separate the factual and legal elements of a claim and then, accepting the "well-pleaded facts as true," "determine whether the facts" pled are sufficient to show a "plausible claim for relief."). Ultimately, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).

## IV. DISCUSSION

As noted, Plaintiff has asserted claims against state officials arising from the tragic death of her daughter at Bray's Family Day Care, a privately owned facility operated by private individuals. (Docket No. 20). Her Amended Complaint raises both official capacity claims against these state officials for injunctive relief and also individual capacity claims for money damages. (*Id*.). However, Plaintiff conceded at the motion hearing that the claim for injunctive relief was not viable. (Docket No. 30 at 55-56).[5] Therefore, said claim is dismissed, with

---

[5] Specifically, Plaintiff's counsel and the Court engaged in the following exchange:

> MR. RABNER: Your Honor, I'm going to focus my brief on the one, what I think to be the viable issue for the plaintiff, which is the exception under due process. I will be prepared to answer in the brief the questions that were posed to me that I was kind of flustered with.
> THE COURT: Correct me if I'm wrong, it seems you are now convinced, Mr. Rabner, sad but true, there's no potential for injunctive relief here?
> MR. RABNER: Sad but true.
> THE COURT: Okay. We're going to be focusing on the non-injunctive relief, right?

prejudice. As to Plaintiff's remaining claim, the Named Defendants argue that Plaintiff's claims should be dismissed because her claims fail as a matter of law under §1983. (Docket No. 22). The Named Defendants further maintain that Plaintiff has failed to properly allege personal involvement in any of the alleged constitutional violations. (*Id*.). Plaintiff contends that she has properly pled a viable cause of action under §1983.

*A. Section § 1983*

Plaintiff's claim is brought pursuant to 42 U.S.C. § 1983, which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983. Section 1983, thereby, creates a cause of action for violations of the United States Constitution and federal laws but does not itself grant any substantive rights; in order to establish a claim under the statute, a plaintiff "'must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under color of state law.'" *Kneipp by Cusack v. Tedder*, 95 F.3d 1199, 1204 (3d Cir.1996) (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir.1995)).

---

MR. RABNER: Yes, and my client will have to take up her own action with respect to any changes she would like to effectuate outside of this litigation.

(Docket No. 30 at 55-56).

Plaintiff asserts due process claims against the Named Defendants in their individual capacities under both the Fifth and Fourteenth Amendments to the United States Constitution. (Docket No. 20). Instantly, Plaintiff's claim alleging that the Named Defendants committed violations of the Fifth Amendment must fail because "the Fifth Amendment restricts the actions of federal officials, not state actors." *Leventry v. Watts*, Civ. A. No. 06-193, 2007 WL 1469038, at *2 (W.D.Pa. May 17, 2007). Plaintiff has named only state officials as defendants in this action and there are no allegations that any federal officials had a role in this matter. (*See* Docket No. 20). Therefore, to the extent Plaintiff has pled a claim arising under the Fifth Amendment against the state officials, said claim is dismissed, with prejudice.

Thus, only Plaintiff's claim raising alleged violations of the Fourteenth Amendment is potentially viable. The Due Process Clause of the Fourteenth Amendment provides that no State "shall deprive any person of life, liberty or property, without due process of law." U.S. Const. amd. XIV, § 1. Although the Due Process Clause protects both substantive and procedural rights, Plaintiff alleges only substantive due process violations in this case. (*See* Docket No. 20).

"In order to establish that the interest-depriving actions of a governmental entity or official constituted a substantive due process violation, a plaintiff must show *both* that the particular interest at issue was entitled to constitutional protection *and* that the government's deprivation of that protected interest occurred in a conscience-shocking manner." *Whittaker v. County of Lawrence*, 674 F.Supp.2d 668, 699 (W.D. Pa. Dec. 7, 2009) (emphasis in original). The reach of such a claim is limited; "the Due Process Clause of the Fourteenth Amendment is not implicated by the lack of due care of an official causing unintended injury to life, liberty or property. In other words, where a government official is merely negligent in causing the injury, no procedure for compensation is constitutionally required." *Davidson v. Cannon*, 474 U.S. 344,

347, 106 S.Ct. 668, 670 (1986) (citing *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)).

Plaintiff asserts that her daughter's right to life or bodily integrity guaranteed by the Due Process clause was violated by the Named Defendants. (Docket No. 20). The Court recognizes that one's right to life and to be free from bodily injury is entitled to protection by the Due Process Clause in an appropriate case. *See Whittaker*, 674 F.Supp.2d at 699. However, Plaintiff has failed to sufficiently allege that a government official actually caused the deprivation of her daughter's protected rights. Construing Plaintiff's factual allegations in her favor, she has, at most, alleged that the state officials in this case acted negligently in performing their official functions to inspect and certify the facility in accordance with the cited state regulations. (*See* Docket No. 20).

In her Amended Complaint, Plaintiff alleges that the only actions taken by the Named Defendants include certifying and re-certifying the privately owned day care facility, conducting inadequate inspections of the facility, failing to promulgate effective state regulations pertaining to state-certified day care centers and failing to enforce existing state regulations designed to protect patrons of such state-certified day care centers. (*Id*.). Plaintiff makes very few specific allegations in her Amended Complaint as to the precise actions taken by the Named Defendants. (*Id*.). The lone allegations are that Defendants Ricketts and Rodden inspected the facility in 2008 and also conducted "periodic inspections" for renewals of the day care's certification thereafter. (Docket No. 20 at ¶¶ 11, 12). On the other hand, it is alleged that Plaintiff voluntarily dropped her daughter, MJP, off at the privately owned and operated day care facility on June 6, 2008. (*Id*. at ¶ 27). She was left unsupervised in the basement of the facility for some time as the proprietor had left to run errands and the other employee went upstairs to attend to another

child.  (*Id*. at ¶¶ 28-29).   During this time, MJP was struck by another child, suffering fatal injuries.  (*Id*.).

The described allegations against Ricketts and Roddens are insufficient to state a plausible substantive due process claim under the Fourteenth Amendment against them.  Indeed, the facility's own negligence does not violate the Constitution because the act of licensing the day care facility does not convert the day care center or its employees into state actors for § 1983 purposes.  *See Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, S.Ct. 1965 (1972).  And, the fact that the Named Defendants allegedly issued a license to the facility despite the purported non-conformity of the day care center to the promulgated state regulations, including, *inter alia*: the class size; ages of the children permitted in each room; the layout of the facility; the lack of available monitoring functions; and the qualifications of the workers, does not demonstrate a violation of federal law.  Instead, these allegations are akin to a "typical state-law tort claim" and "the Due Process Clause should [not] be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law."  *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 112 S.Ct. 1061 (1992) (citing *Daniels*, 474 U.S. at 332-33, 106 S.Ct. at 665-66).  In order to invoke the Due Process Clause, a plaintiff must allege behavior by a defendant which shocks the conscience[6] rather than mere negligence or some other state-law tort.  *Id*.  The actions undertaken by Ricketts and Rodden are at least twice removed from the actual act which caused the death of MJP and, as discussed in further detail below under the Court's analysis of the claim under the state-created danger exception, Plaintiff's factual allegations are insufficient to demonstrate that any of the Named Defendants acted in a manner which would "shock the conscience."  *See* § II.B.2, *infra*.

_____

[6]     *See* further discussion regarding Plaintiff's failure to allege conduct by the Named Defendants which shocks the conscience in § III.B.2, *infra*.

In addition, Plaintiff's claims against Defendants Richman, Dichter, Klunk and Lau must fail because Plaintiff has not alleged any facts which support a finding of personal involvement of these Defendants in the alleged due process violations.   (*See* Docket No. 20).   It is well-settled that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 129 S.Ct. at 1948.   "Liability based on *respondeat superior* arises 'solely on the basis of the existence of an employer-employee relationship,' regardless of whether the employer had any part in causing harm." *Santiago*, 629 F.3d at 128-29 (quoting *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 692, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). However, "a supervisor may be personally liable ... if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *Id*. (citing *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir.2004)). There are simply no facts pled in the Amended Complaint of any actions taken by these Defendants, let alone facts sufficient to demonstrate personal liability as is required under the law.

    *B. State-Created Danger*

The Court now turns to Plaintiff's claim under the state-created danger theory beginning with the general rule that "a state's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."  *Id*. at 195-96.  *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 195-96 (1989).  In order to successfully invoke the state-created danger exception to this general rule, a plaintiff must prove each of the following essential elements:

    (1) the harm ultimately caused was foreseeable and fairly direct;

(2) a state actor acted with a degree of culpability that shocks the conscience;

(3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts or a member of a discrete class of persons subject to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

(4) a state actor affirmatively used his or her authority in a way that created danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Bright v. Westmoreland County*, 443 F.3d 276, 281 (3d Cir. 2006); *see also Ye v. United States*, 484 F.3d 634, 638 (3d Cir. 2007) (quoting same).  "The failure by a plaintiff to establish any of the foregoing elements will preclude a viable state-created danger claim."  *Hayes v. Erie County Office of Children and Youth*, Civ. A. No. 1:06-cv-234-SJM, 2011 WL 1201194, at *35 (W.D.Pa. Mar. 29, 2011).  In this Court's estimation, assuming the facts in Plaintiff's Amended Complaint to be true, and resolving all inferences in her favor, she cannot plausibly state a viable claim for relief under a state-created danger theory.

1. <u>Affirmative Act</u>

The Court first addresses the "affirmative act" or fourth element under the test articulated in *Bright* because the Named Defendants have submitted persuasive authority which convinces this Court that the fourth element cannot be established under the factual circumstances of this case.  To this end, the Court finds that Plaintiff has failed to set forth any facts which would support this element, i.e., that the Named Defendants committed any affirmative act which either created the danger to MJP that she would be fatally injured by an older child or to make her vulnerable to the same type of injury.  In *Bright*, our Court of Appeals further held that "under the fourth element of a state-created danger claim 'liability under the state-created danger theory is predicated upon the states' affirmative acts which work to the plaintiffs' detriments in terms of

exposure to danger." *Bright*, 443 F.3d at 282 (quoting *D.R. by L.R. v. Middle Bucks Area Vo. Tech. School*, 972 F.2d 1364, 1374 (3d Cir. 1992)). Also, although the line between action and inaction is not always clear, "[i]t is misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." *Id*.

The Named Defendants rely on three decisions involving similar fact patterns, which this Court finds persuasive, *Ruiz v. McDonnell et al.*, 299 F.3d 1173 (10th Cir. 2002); *Miller v. Love*, 2006 WL 3196346 (S.D. Ohio 2006) and *Tobin v. Washington*, 2007 WL 3275073 (W.D. Wash. 2007), *aff'd*, 327 Fed.Appx. 747 (9th Cir. 2009).

In *Ruiz*, a mother left her infant son at a privately owned and operated day care facility, where he was injured by one of the workers at the day care center and died as a result of his injuries. *Id*. at 1178. Ms. Ruiz filed suit against numerous state officials claiming a violation of her child's due process rights by the state officials' failure to: deny a license to the day care facility; extensively search the background of the proprietors, who had a history of domestic violence; and discover that the facility did not have proper insurance coverage. *Id*. at 1178. The district court granted the state officials' motion to dismiss and the Court of Appeals for the Tenth Circuit affirmed. *Id*. at 1179. In so holding, the Court of Appeals noted that the mere licensure of the day care center by the state was not an affirmative act sufficient to state a claim under the "danger creation" exception to the general rule of *DeShaney* as articulated by the Court. *Id*. at 1183 ("we do not view the mere licensure of [the day-care facility] as constituting the requisite affirmative conduct necessary to state a viable § 1983 claim.").

In *Miller*, the district court dismissed § 1983 claims by the estate of a 19-month old under the state created danger theory against state officials who re-certified the day care worker responsible for the child's death. *Miller*, 2006 WL 3196346, at *7-9. Like the Court of Appeals

in *Ruiz*, the district court in *Miller* found that the act of re-certifying this individual was not sufficient to establish an affirmative act under the state created danger theory. *Id*. Consistent with these decisions, in *Tobin*, the district court found that the act of licensing and re-licensing a private day care center, despite the fact that the center was in clear violation of state regulations which required a fence to be erected to prevent access to a lake on the property, was not an affirmative act sufficient to establish liability on the state created danger theory. *See Tobin*, 2007 WL 3275073, at *6-7.

Although our Court of Appeals has not addressed the state-created danger theory on the precise fact pattern before the Court, these decisions are instructive and their holdings are consistent with applicable Third Circuit law. To this end, the United States Court of Appeals for the Third Circuit has reasoned that "[t]here must be a direct causal relationship between the affirmative act of the state and plaintiff's harm. Only then will the affirmative act render the plaintiff 'more vulnerable to danger than had the state not acted at all.'" *Kaucher v. County of Bucks*, 455 F.3d 418 (3d Cir. 2006) (quoting *Bright*, 443 F.3d at 281). The alleged affirmative act must be a "but for cause" of the injury which directly places the victim in harm's way. *Id*. Here, the acts of licensing and re-licensing the facility were not a "but for cause" of the injuries to MJP, who was injured by another child at the day care center.

Specifically, Plaintiff admits that her daughter was a patron of a privately owned day care facility and was injured by a private individual, an older classmate, who had behavioral issues. (Docket No. 20 at ¶ 36). The injuries occurred after the children were left unsupervised in a basement classroom for some time when the proprietor of the facility was running errands and the other employee was attending to another child on a different floor of the converted house. (*Id*. at ¶¶ 27-36). Despite same, Plaintiff maintains that the named defendants, employees of

certain divisions of the Department of Public Welfare, were negligent, grossly negligent or acted in willful violation of the decedent's constitutional rights by failing to enact proper regulations, by licensing and re-licensing Bray's Family Day Care, and by failing to enforce existing regulations. (*Id*. at ¶¶ 5-12). The existing regulations required, *inter alia*, that: children in the day care center of certain ages be separated; the number of children permitted in the facility at one time be restricted; employees of the facility receive a separate certification and prerequisite number of hours of training; and that the children be supervised at all times. Plaintiff alleges affirmative action by only two of the named defendants, Joni Ricketts and Michael Rodden, as they were involved in the granting of the initial registration of the day care, subsequent re-licensing of the facility and inspected the facility. (*Id*. at ¶¶ 11-12).

Plaintiff contends that the day care facility should not have passed the initial inspection or any subsequent inspection due to the layout, i.e., the classroom area was located in a basement, but the changing area, kitchen and other necessary facilities were upstairs and out of sight. (Docket No. 29). Even assuming this to be true, the fact that Ricketts and Rodden may not have been diligent in their inspection and assessment of the facility and issued it a license when it did not conform to the state regulations did not directly cause the injuries to MJP under binding Third Circuit precedent. At most, Plaintiff avers that by granting the certification, and permitting the day care center to operate despite claimed deficiencies, the named defendants "increased the risk" that MJP would be put in a position where she was unsupervised and then subject to potential harm from an older child. *See Morse*, 132 F.3d at 915-16 (holding that "there was no direct casual connection between the acts or omissions of the state and the harm which befell the victim" because the state merely "increased the risk" that the victim would be vulnerable to the type of injury suffered.); *see also Grau ex rel. Grau v. New Kensington Arnold Sch. Dist.*, 2011

WL 2076382, at *3 (3d Cir. 2011) (same). Because Plaintiff has failed to sufficiently allege facts supporting the fourth element, her allegations are insufficient to state a plausible claim for relief under the state created danger exception. Hence, Plaintiff's state created danger claim must be dismissed on this basis alone. However, the Court will continue its analysis of the remaining elements for completeness.

### 2. Shocks the Conscience

Under the second element, the state actor must be alleged to have acted with a degree of culpability that "shocks the conscience." *See Bright*, 443 F.3d at 281. "In a case where state actors have the time to make unhurried judgments, the level of culpability required to shock the conscience is deliberate indifference." *Navolio v. Lawrence County*, 406 Fed.Appx. 619, 624 (3d Cir. 2011) (citing *Sanford v. Stiles*, 456 F.3d 298, 309 (3d Cir. 2006)). "[D]eliberate indifference may not require a state actor's knowledge of a risk of harm 'when the risk is so obvious that it should be known.'" *Id.* (citing *Sanford*, 456 F.3d at 309-310). Here, as discussed above, the alleged actions attributed to the Named Defendants rise, at most, to the level of negligence.[7] (*See* Docket No. 20). Indeed, the factual allegations in the Amended Complaint are insufficient to demonstrate conscience-shocking conduct by the Named Defendants. (*Id.*). Moreover, to the extent that Plaintiff's pleading characterizes the Named Defendants' conduct using the legal terms of art at issue in this case, including allegations of willfulness, conscience-shocking and deliberate indifference, the Court does not credit such improper legal conclusions. *See Fowler*, 578 F.3d at 210–11 ("[we] must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."). Hence, Plaintiff has failed to sufficiently plead facts to support her allegation that the conduct of the Named Defendants "shocked the conscience."

---

[7]     *See* § III.A., *supra.*

### 3. Foreseeability

The first element, that "the harm ultimately caused was foreseeable and fairly direct", is also not established in this case. *See Bright*, 443 F.3d at 281. Under this inquiry, the Court must examine the Amended Complaint to determine whether Plaintiff sets forth allegations of "an awareness on the part of the state actors that rises to the level of actual knowledge or an awareness of risk that is sufficiently concrete to put the actors on notice of the harm." *Phillips*, 515 F.3d at 238. The Court must further determine whether the resulting harm is foreseeable, i.e., whether "the harm is a 'fairly direct' result of the defendant's acts." *Id.* at 239. The harm is not foreseeable if the causation between the act and the resulting harm is "too attenuated" to hold the defendant responsible for same. *Morse*, 132 F.3d at 909.

In this case, although undeniably tragic, the facts alleged do not support a finding that the harm caused to MJP was a foreseeable and fairly direct result of the named defendants' actions in certifying and re-certifying the day care center. The Named Defendants' actions are simply too far removed from the harm suffered by MJP. *See id.* While they may have certified the day care center despite deficiencies in the layout under the applicable state regulations, the factual allegations do not support a finding that the Named Defendants had actual knowledge or awareness of the risk to MJP of being assaulted by another student of the day care. (*See* Docket No. 20). First, the Named Defendants had no awareness of KJB's violent propensities or behavioral problems. (*Id.*). Second, the Named Defendants were not advised that the proprietor of the day care center left the facility to run errands during its operation. (*Id.*). Third, and most importantly, the Named Defendants had no knowledge that the children in the day care center were left unsupervised for periods of time. (*Id.*). Plaintiff alleges that all of these facts were

likely known by the day care center,[8] through its proprietor and employee; however, this entity and these individuals are not named as defendants in this case and such knowledge cannot be fairly attributed to the Named Defendants – who under the most liberal reading of the Amendment Complaint, may have entered the facility on only a few occasions, if at all.[9] (Docket No. 20 at ¶¶ 11-12). Given these facts, it is evident that the Named Defendants did not have a "sufficiently concrete" awareness of the potential harm to hold them liable under a state-created danger theory. *See Phillips*, 515 F.3d at 238.

In addition, as discussed above, there are numerous intervening acts which preclude liability in this case, primarily, the lack of adult supervision of the children by the private day care facility's employees at the time of the occurrence of MJP's injuries and death. In this Court's estimation, the lack of supervision of the children cannot be fairly attributed to the Named Defendants. Therefore, the first element under the state-created danger analysis is not established.

### 4. Conclusion

Having determined that Plaintiff has failed to sufficiently allege a claim under the first, second and fourth elements of a state-created danger claim, the Court need not analyze the third element, i.e., the relationship between the state and MJP at the time of her death. *See Hayes*, 2011 WL 1201194, at *35. Accordingly, based on the foregoing analysis, Plaintiff's state-created danger claim must be dismissed.

### C. Special Relationship Exception

---

[8]     Indeed, Plaintiff avers that "[i]t was also subsequently determined that both Bray and Swann had concerns regarding anger management issues existing with KBT and her prior conduct towards the Decedent." (Docket No. 20 at ¶ 36).

[9]     As the Court recognized at the motion hearing, and as confirmed by Plaintiff's counsel, both Bray and Swann were convicted criminally in the Court of Common Pleas for their actions in this case. (Docket No. 30 at 14-16). Plaintiff also reached a civil settlement with the day care center in a separate action. (*Id*.). Finally, the Court understands that the day care facility is no longer operating. (*Id*.).

Plaintiff alternatively argues that the named defendants may be held liable under the special relationship exception to *DeShaney*.[10] (Docket Nos. 23, 24). However, in this Court's opinion, the special relationship theory is also inapplicable to this case. Under this exception, "liability attaches under § 1983 when the state fails, under sufficiently culpable circumstances, to protect the health and safety of the citizen to whom it owes an affirmative duty." *D.R. by L.R. v. Middle Bucks Area Vocational Technical School*, 972 F.2d 1362, 1369 (1992). As noted by the Court of Appeals in *D.R.*, this exception is narrow and applies to prisoners, involuntarily committed mental patients, and foster children. *Id*. The exception does not apply to the relationship between a school and its students, despite state compulsory attendance laws. *Id*. Here, there are no allegations sufficient to demonstrate a special relationship between the state and MJP; she was simply placed by her mother at a privately owned day care facility where she was to be cared for, supervised and taught. (*See* Docket No. 20). Like the compulsory attendance laws at issue in *D.R.*, the state regulatory scheme providing certification for day care centers did not place a restraint upon MJP's liberty while at the day care center sufficient to invoke the special relationship exception. *See D.R.*, 972 F.2d at 1369. Indeed, Plaintiff voluntarily chose to enroll MJP at the privately owned facility and there are no allegations that the state played any role in this decision. (*See* Docket No. 20 at ¶¶ 17, 27). Therefore, the special relationship exception does not apply to the facts of this case. Accordingly, Plaintiff's claim under such theory must be likewise dismissed.

### D. Futility of Amendment

The United States Court of Appeals for the Third Circuit has held that "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless

---

[10] The Court notes that at the motion hearing Plaintiff's counsel largely admitted that Plaintiff's claim was not viable under a special relationship theory. (*See* Docket No. 30 at 39-40, 59-60); *see also* n. 4, *supra*.

such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245. Further, "even when [a] plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time." *Id*.

In this case, Plaintiff was previously granted leave to amend her complaint after the Defendants filed an initial motion to dismiss wherein they raised a number of arguments, including the same arguments that are at issue in the present motion. (Docket No. 19); *see also* § II.B., *infra*. Plaintiff's Amended Complaint has failed again for the same reasons as her initial Complaint, i.e., she has failed to state a plausible claim for relief under the state-created danger and special relationship exceptions to *DeShaney*. (*Id*.). With respect to the present motion to dismiss, Plaintiff was given the opportunity to present oral argument to the Court and to submit a supplemental brief in further support of her claim after the argument. (*See* Docket Nos. 29, 30). However, despite the amendment, oral argument and further submissions, Plaintiff has not presented the Court with sufficient factual allegations to state a claim for relief under the Due Process Clause that is plausible given the circumstances alleged in this case. Thus, any further amendment would be futile and Plaintiff's Amended Complaint must be dismissed, with prejudice.

V.  CONCLUSION

Based on the foregoing, Defendants' motion to dismiss [21] is granted. Plaintiff's Amended Complaint is dismissed, with prejudice. An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Court

Date: June 22, 2011

cc/ecf: All counsel of record.